# United States Court of Appeals for the Federal Circuit

04-1265


ASPEX EYEWEAR, INC., MANHATTAN DESIGN STUDIO, INC.,
CONTOUR OPTIK, INC., and ASAHI OPTICAL CO., LTD.,

Plaintiffs-Appellants,

v.

MIRACLE OPTICS, INC. and VIVA OPTIQUE, INC.,

Defendants-Appellees.


Michael A. Nicodema, Greenberg Traurig, LLP, of New York, New York, argued for plaintiffs-appellants. With him on the brief was Barry J. Schindler.

Jeffrey A. Schwab, Abelman, Frayne & Schwab, of New York, New York, argued for defendants-appellees. With him on the brief were Michael Aschen and Anthony J. DiFilippi. Of counsel were Mark N. Hurvitz and David B. Abel, Squire, Sanders & Dempsey LLP, of Los Angeles, California.

Appealed from: United States District Court for the Central District of California

Senior Judge Lourdes G. Baird

# United States Court of Appeals for the Federal Circuit

04-1265

ASPEX EYEWEAR, INC., MANHATTAN DESIGN STUDIO, INC.,
CONTOUR OPTIK, INC., and ASAHI OPTICAL CO., LTD.,

Plaintiffs-Appellants,

v.

MIRACLE OPTICS, INC. and VIVA OPTIQUE, INC.,

Defendants-Appellees.

_____

DECIDED: January 10, 2006

_____

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and
GAJARSA, Circuit Judge.

LOURIE, Circuit Judge.

Aspex Eyewear, Inc. and Contour Optik, Inc. appeal from the decision of the United States District Court for the Central District of California dismissing their action against Miracle Optics, Inc. and Viva Optique, Inc. on the ground that neither Aspex nor Contour had standing to sue for infringement of U.S. Patent 6,109,747.[1] Aspex Eyewear, Inc. v. Miracle Optics, Inc., No. 01-10396 (C.D. Cal. Feb. 6, 2004) ("Decision"). Because we conclude that Contour was the owner of the '747 patent when

---

[1] In addition to the '747 patent, the original complaint also asserted infringement of U.S. Patent 5,568,207, which later issued as U.S. Reissue Patent 37,545. The original complaint also named as plaintiffs Manhattan Design Studio, Inc. ("MDS") and Asahi Optical Co., Ltd. After the district court entered final judgment on the '545 patent under Federal Rule of Civil Procedure 54(b), MDS and Asahi ceased to participate in the action involving the '747 patent.

the original complaint was filed, and thus it had standing to sue in this action, we vacate the district court's dismissal. Given this conclusion, we remand for the court to redetermine whether all necessary parties to this action were joined.

BACKGROUND

The primary issue in this appeal is whether the district court correctly determined that appellant Contour transferred all substantial ownership rights to the '747 patent to nonparty Chic Optic, Inc., in which case Contour lacked standing to sue for infringement, or whether it merely granted Chic a license to that patent, in which case Contour was still the owner of the patent and had standing to sue. On August 29, 2000, the '747 patent issued in the name of David Yinkai Chao as inventor and Contour as assignee. The '747 patent claims an eyeglass combination having, inter alia, an auxiliary eyeglass frame that houses specialized lenses (e.g., sunglasses) and attaches onto a traditional eyeglass frame. A key feature of the patented combination is the placement of magnetic studs on the traditional eyeglass frame to improve the auxiliary eyeglass frame's attachment onto the traditional eyeglass frame.

On March 20, 2001, Contour and Chic executed an agreement entitled "Distribution and License Agreement" (the "Contour/Chic agreement"). Neither party disputes that under the terms of the agreement, Contour granted Chic certain rights under the '747 patent. Among these were (1) the exclusive right to make, use, and sell in the United States products covered by the patent, (2) the first right to commence legal action against third parties for infringement of the patent and the right to retain any award of damages from actions initiated by Chic, and (3) a virtually unfettered right to sublicense all of its rights to a third party. Under the terms of the agreement, Contour

retained the right to commence legal action against third parties for infringement of the patent if Chic refused to do so within 30 days of receiving notice of infringement, and the option to contribute up to 50% of the litigation expenses incurred in any patent infringement action brought by Chic in exchange for the right to receive a pro rata share of any subsequent award arising from such an action. Most significantly, for purposes of this appeal, the agreement also contained a clause providing that the agreement would expire on March 6, 2003, and in no event later than March 16, 2006, if Chic exercised its one option to extend, after which all of the rights under the '747 patent that the agreement initially granted to Chic would terminate.[2]

On April 5, 2001, Chic and Aspex executed a sublicense agreement entitled "License Agreement" (the "Chic/Aspex agreement"). In that agreement, Chic granted to appellant Aspex all of its rights under the '747 patent, including the exclusive right to make, use, and sell products covered by the patent, and the right to sue for infringement of the patent.

Just prior to the grant of the sublicense, however, on March 28, 2001, Aspex and Contour filed a complaint against appellee Miracle for infringement of the '747 patent.[3] Subsequently, the parties each filed motions for partial summary judgment. Decision, slip op. at 3. The court denied Miracle's motion for partial summary judgment of

---

[2] Paragraph 3.1 of the Contour/Chic agreement, which the district court identified as conferring a "reversionary interest," states: "Unless terminated earlier as hereinafter provided, the Term of this Agreement shall commence on the Effective Date and, shall end on March 6, 2003. CHIC shall have the option to extend the Terms for another three (3) years from March 16, 2003, upon written notice to CONTOUR on or before September 1, 2002."

[3] The original complaint also included the '207 patent and had as additional plaintiffs MDS and Asahi. See supra n.1. The court added appellee Viva Optique, Inc. as a defendant on December 4, 2003.

invalidity of claim 12 and granted Contour's and Aspex's motion for partial summary judgment of literal infringement of claim 12. Id. On February 6, 2004, the court granted Miracle's and Viva's motion to dismiss the action on the ground that neither Contour nor Aspex had standing to sue for infringement of the patent. Id., slip op. at 26.

According to the district court, neither Contour nor Aspex possessed the "rights of the patentee" when the original complaint was filed, and thus each lacked standing to sue. Regarding Aspex's claim of standing, because a party's standing to sue must exist at the time an original complaint is filed, the court determined that Aspex could not have had standing to sue since its agreement with Chic providing it with certain rights was executed eight days after the original complaint was filed. Moreover, the court concluded that the amended complaint, filed on April 9, 2002, could not cure this defect in standing because an amended complaint must be based on facts existing at the time of the filing of the original complaint. Id., slip op. at 13-14.

In reaching its decision, the court also rejected Aspex's contention that, at the time the original complaint was filed, it possessed the right to sue through a prior, implied contract with Chic. Citing our decision in Enzo APA & Son v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998), the court recognized that although "a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing." Decision, slip op. at 13. The court concluded that Aspex could not have been a "virtual" assignee of the '747 patent through an implied contract at the time the original complaint was filed, and thus that it did not have standing to bring this action.

The district court finally held that Contour did not have standing to sue because it had already transferred to Chic all substantial ownership interests in the '747 patent at the time the original complaint was filed. The court was persuaded by Chic's possession of "the right to sue [for infringement of the '747 patent], an unfettered right to sublicense [the patent to third parties], and the exclusive right to make, use, and practice the '747 patent in the United States." Id., slip op. at 25. The court also determined that the agreement's term clause, which gave Contour a "reversionary interest," although a factor weighing in favor of the agreement being a license rather than an assignment, was not dispositive. Id., slip op. at 19. According to the court, "if the agreement transfers the other substantial rights to the patent, the court may not find that a 'hard' transfer [date] alone mandates a finding that the agreement is a license rather than an assignment." Id.

The district court entered final judgment on May 4, 2004. Aspex and Contour timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

An issue of standing to sue is a jurisdictional one that we review de novo. See Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc) (citations omitted). Under 35 U.S.C. § 281, "[a] patentee shall have remedy by civil action for infringement of his patent." The term "patentee" encompasses "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2000). A patentee may transfer title to a patent by assignment, and the assignee may be deemed the effective patentee under 35 U.S.C. § 281 for purposes of

holding standing to sue another for patent infringement in its own name.  <u>Prima Tek II, L.L.C. v. A-Roo Co.</u>, 222 F.3d 1372, 1377 (Fed. Cir. 2000).

While a licensee normally does not have standing to sue without joinder of the patentee, an exclusive license may be tantamount to an assignment for purposes of creating standing if it conveys to the licensee all substantial rights to the patent at issue. <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.</u>, 944 F.2d 870, 875 (Fed. Cir. 1991); <u>see also</u> <u>Waterman v. Mackenzie</u>, 138 U.S. 252, 256 (1891) ("Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.").  To determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted.  <u>Vaupel</u>, 944 F.2d at 874 (explaining that the court must examine whether the agreements transferred all substantial rights to the patent at issue and whether the surrounding circumstances indicated an intent to do so).

A.    <u>Contour's Standing to Sue</u>

On appeal, appellants argue that Contour did not transfer to Chic all substantial rights to the '747 patent, and thus that Chic was merely a licensee without standing to sue.  As principal support for their position, appellants cite the provision of the Contour/Chic agreement concerning the term of the license, which provides that the agreement will expire on March 6, 2003, and in no event later than March 16, 2006.  According to appellants, the existence of a term limit to the license is a dispositive fact in its favor because of its public policy ramifications.  That provision creates the risk of

04-1265                                                      6

multiple lawsuits if Contour were not joined as a necessary party under Federal Rule of Civil Procedure 19 in any infringement action involving the '747 patent. Appellants further assert that because the potential full term of the Contour/Chic agreement is significantly shorter than the term remaining on the '747 patent once the agreement expires,[4] the risk of multiple lawsuits is heightened. Finally, appellants distinguish the term provision contained in the Contour/Chic agreement from the reversionary interests that we found to be minor in prior decisions, viz., Vaupel, 944 F.2d at 874, and Prima Tek II, 222 F.3d at 1378-79. According to appellants, the reversionary interests in those agreements did not have a "hard" termination date. Since the "licensees" of the Vaupel and Prima Tek II agreements held the patent rights for an indefinite period of time, appellants argue that the same public policy concern was not implicated in those cases.

Appellants also contend that Contour retained the right to sue for infringement, which undercuts the district court's finding of an assignment. Although the Contour/Chic agreement gives Chic the right to sue for past infringement, appellants assert that it did not transfer Contour's right to sue for present and future infringement. Appellants further argue that Contour could bring its own suit for infringement if Chic did not take action within 30 days of receiving notice of infringement, and Contour's retention of that right weighs in favor of finding the Contour/Chic agreement to be a license, not an assignment.

Finally, appellants contend that the court did not give enough weight to Contour's control over Chic's ability to assign its rights to the '747 patent. Appellants point to

---

[4] Contour claims that the '747 patent expires in 2017. The filing date for the application leading to the '747 patent was April 28, 1997. Accordingly, under 35 U.S.C. § 154, absent a patent term extension, the '747 patent will apparently expire 20 years later, subject to any terminal disclaimer.

paragraph 19.1 in the Contour/Chic agreement, which states: "[no] right or license hereunder may be assigned or otherwise transferred nor any duty or obligation delegated, either in whole or in part, by operation of law or otherwise, by CHIC without CONTOUR's prior written consent, unless the said assignment is made to an Affiliate of CHIC's." Appellants contend that such control and veto power over subsequent assignments by Chic is another important ownership right to the '747 patent that Contour did not transfer to Chic, and hence argues for its retained ownership of the patent.

Appellees respond that Contour had transferred all substantial rights to the '747 patent by the time the complaint was filed. Citing the Supreme Court's Waterman decision, appellees argue that the mere fact that the Contour/Chic agreement contained a reversionary interest does not preclude a finding of assignment. According to appellees, until the reversionary interest is triggered, an exclusive licensee continues to possess all substantial ownership rights in a patent. Accordingly, appellees argue that until Chic's rights to the '747 patent expire in 2006, Chic, not Contour, is the effective owner of the patent. Appellees also contend that the agreement in Vaupel contained a reversionary interest, but we still concluded that the transfer of the patent rights there was an assignment.

Appellees also contest the assertion that the Contour/Chic agreement did not give Chic the right to sue for present or future infringements during the term of the agreement. As support for that argument, appellees cite paragraph 11.2 of the agreement: "CHIC and its authorized exclusive sublicensees may, at its own expense, take and maintain of [sic] all reasonable measures, including litigation and seeking

preliminary injunctive and all other available relief, to enforce the '747 Patent against and to abate and/or prevent infringements of its rights under the Agreement." According to appellees, the plain meaning of this language is that Chic can sue for past, present, and future infringement of the '747 patent.

Lastly, appellees contend that paragraph 19.1 of the agreement, which requires Contour's written permission before Chic can assign its rights under the agreement to a third party, is not meaningful to this issue. Appellees argue that the more relevant provision is paragraph 4.4, which gives Chic the virtually unfettered authority to sublicense all of its rights to the '747 patent to any third party of its choosing. According to appellees, this unrestricted sublicense right is precisely the type of ownership interest that this court in Prima Tek II, 222 F.3d at 1379-80, found to be consistent with an effective assignment.

We agree with appellants that the Contour/Chic agreement did not constitute a transfer from Contour to Chic of all substantial rights to the '747 patent, and hence it was not an assignment. The essential issue regarding the right to sue on a patent is who owns the patent. The landmark Supreme Court case of Waterman v. MacKenzie, 138 U.S. 252, 255, 256 (1891), held that if a transfer of patent rights, regardless whether it is through an agreement entitled a license or an assignment, includes "the exclusive right to make, use, and vend" the patented invention, the assignee has standing to bring suit in its own name. The case law of one of our predecessor courts has followed Waterman by articulating the "all substantial rights" standard and requiring a determination whether a particular transfer of rights falls on one side or the other of that line. See Bell Intercontinental Corp. v. United States, 381 F.2d 1004, 1011 (Ct. Cl.

1967).  Other decisions of this court have continued to draw that line.  But, at bottom, the question is "who owns the patent"?  Does the transfer or retention of certain rights amount to an assignment of the patent or not?  A key factor has often been where the right to sue for infringement lies.  See, e.g., Prima Tek II, 222 F.3d at 1380.

To be sure, Contour has transferred to Chic certain rights that are often associated with ownership of a patent.  As the district court correctly recognized, Chic received (1) the exclusive right to make, use, and sell products covered by the patent; (2) the right to sue for infringement of the patent; and (3) a virtually unrestricted authority to sublicense its rights under the agreement.  Those provisions themselves strongly favor a finding of an assignment, not a license.

Moreover, Contour's attempts to detract from those rights are not persuasive.  Contour transferred to Chic more than the right to sue only for past infringement.  Paragraph 11.2 gave Chic the right to "abate and/or prevent infringements."  Such language contemplates the grant of the right at least to sue to enjoin future infringements during the term of the agreement.  We also agree with the district court that Contour's right to participate in lawsuits initiated by Chic during the term of the agreement is insignificant since that participation is limited to monetary contributions and receipts; Contour does not have a right to make decisions on litigation strategy.  In addition, we agree with the district court that the agreement minimizes the significance of any right to sue that Contour may have had since it retained "no supervisory or veto power over Chic's grant of sublicenses."  Decision, slip op. at 21.  Furthermore, given its virtually unfettered right to sublicense, Chic's limited ability to assign its rights to unaffiliated third parties is not controlling.

However, the dominant factor in the Contour/Chic agreement on which we differ with the district court's otherwise well-reasoned opinion is the provision limiting the term of the license. Chic's rights, however substantial in other respects, are unquestionably valid for only a limited period of time, ending no later than March 16, 2006. See supra n.2. As of March 16, 2006, Contour, absent an amendment of the agreement, will regain all of the rights under the '747 patent that it had previously transferred to Chic. It is thus the unquestioned owner of the patent, and, whatever rights Chic had up until 2006, it is clear that Chic never had all substantial rights to the patent, i.e., it never was the effective owner of the patent. Barring the '747 patent being found invalid or unenforceable, as of March 16, 2006, Chic will have possessed its rights for approximately five years, in contrast to Contour's sole and exclusive rights for the remainder of the patent term. See supra n.4. Chic never had effective ownership of the '747 patent. It was not a situation in which Chic had an exclusive license with all substantial rights that was only defeasible in the event of a default or bankruptcy, or some other condition subsequent.[5] By having rights for only a limited portion of the patent term, it simply did not own the patent. It was merely an exclusive licensee without all substantial rights. The '747 patent was never assigned; it was exclusively licensed for only a fixed period of years, which does not meet the all substantial rights standard. Thus, we hold that the Contour/Chic agreement was a license, not an assignment, and Contour was the owner of the patent when the complaint was filed and entitled to sue.

---

[5] We also note that we are not presented with the situation in which a patent was effectively assigned and ownership changed for a period of time, after which by separate agreement it was to be reassigned in the future to the original patentee.

Our conclusion that the termination provision in the Contour/Chic agreement precludes a finding that the agreement was an assignment is consistent with the policy concerns that we expressed in Vaupel. In Vaupel, while considering the importance of an agreement's right to sue provision, we noted the public policy in favor of preventing multiple lawsuits on the same patent against the same accused infringer. 944 F.2d at 875-76. That policy favors finding Chic not to be the effective owner of the '747 patent. If we were to consider Chic the assignee of the patent under the Contour/Chic agreement, as appellants recognize, it is possible that Chic could assert that patent against an accused infringer during the term of the agreement without Contour's participation in the lawsuit, and Contour could later assert the patent against the same accused infringer once the agreement expired. After all, the six-year limitation on damages could encompass a period when Chic, according to the district court's holding, and Contour both had rights to sue under the patent.

As we expressed in Evident Corp. v. Church & Dwight Co., Inc., 399 F.3d 1310, 1314 (Fed. Cir. 2005), another policy consideration is to prevent a party with lesser rights from bringing a lawsuit that may put the licensed patent at risk of being held invalid or unenforceable in an action that did not involve the patentee. That policy counsels against allowing Chic, who only putatively had rights under the patent for a limited time, to bring a patent infringement action without Contour, who would own the patent rights for a much longer period of time, and thereby unilaterally jeopardize Contour's future enjoyment of the '747 patent.

The cases cited by appellees in its argument that a reversionary interest alone should not compel us to conclude that the Contour/Chic agreement is a license, and not

an assignment, are readily distinguishable.  As we have stated, this case involves more than a reversionary clause.  Moreover, none of the cases that appellees cite, <u>Vaupel</u>, 944 F.2d at 874 (termination provision triggered only in the case of bankruptcy), <u>Prima Tek II</u>, 222 F.3d at 1378-79 (agreement provided for one-year renewals, but otherwise, the agreement did not contain a fixed termination date), or <u>Waterman</u>, 138 U.S. at 261 (patentee could regain rights to the patent by paying off a mortgage), addressed an agreement with a definite termination date, as is the case here.[6]  On the contrary, in each of the agreements in appellees' cited cases, the term of the agreement existed potentially for the life of the respective patents, and it was presumable that the transferred patent would never return to the assignor.  That is not the case here.

We therefore vacate the district court's decision that Contour lacked standing to bring this action in view of our conclusion that Contour was the owner of the '747 patent when the original complaint was filed.

B.      Joinder of Necessary Party

However, a further inquiry awaits us concerning whether the district court's dismissal was proper.  Even though the lawsuit was properly brought in the name of the owner of the patent, we must still determine whether the action as brought by appellants included all necessary parties.  For the same policy reasons that a patentee must be joined in any lawsuit involving his or her patent, there must be joinder of any exclusive licensee.  See <u>Independent Wireless Tel. Co. v. Radio Corp.</u>, 269 U.S. 459, 466 (1926) (stating that both the owner and the exclusive licensee are generally necessary parties

---

[6]  In <u>Prima Tek II</u>, we expressly stated that we were leaving unanswered the question whether an agreement with a "hard" termination date could convey to a licensee standing to sue.  222 F.3d at 1378.

in an action in equity). Appellants assert that all of the necessary parties to this action were parties to the original complaint since Contour was the patentee and Aspex was the exclusive licensee of the '747 patent. According to appellants, Aspex obtained an exclusive license through a prior implied or oral sublicense agreement with Chic that matured contemporaneously upon later execution of the written Contour/Chic agreement. Appellants contend that all of the rights that were conveyed to Chic by the Contour/Chic agreement were also passed on to Aspex. Even if Aspex had not acquired its exclusive license before the original complaint was filed, appellants argue that Aspex had acquired sufficient standing through the Chic/Aspex agreement, which was executed before the amended complaint was filed.

In its decision, the district court did not consider whether Aspex was an exclusive licensee with the right to sue, either through an implied license or the later Chic/Aspex agreement. The court determined only that Aspex was not an assignee of the '747 patent when the original complaint was filed. Once the court determined that Contour was not the patentee at the time the complaint was filed, the only way a dismissal could have been avoided was if Chic had transferred to Aspex all of its rights under the patent through a written agreement prior to the filing of the complaint, which the court found had not occurred. However, now that we have concluded that Contour was the effective patentee when the complaint was filed, whether Aspex or Chic was an exclusive licensee at that time is an issue that must be decided. If the license between Chic and Aspex was not effective at the time of the original complaint, then Chic was a necessary party and it has not been joined. If Aspex was an exclusive licensee at the proper time, then Chic was not a necessary party and Aspex was in fact a proper plaintiff.

However, we leave the question of Aspex's status for the district court to decide. As the district court has already recognized, determining whether an assignment or a license was granted involves different analyses. For example, an assignment must be in writing, while a license can be implied. Enzo, 134 F.3d at 1093. Determining whether there was an implied license between Chic and Aspex prior to the filing of the complaint may involve a factual determination. As an appellate court, we decline to undertake that inquiry in the first instance. We also leave it for the district court to determine whether Chic, if it was a necessary party to this action, could have been joined. Thus, we remand for the district court to determine whether all necessary parties to this action were joined, or could have been joined.

## CONCLUSION

We vacate the district court's decision dismissing this action on the ground that neither Contour nor Aspex had standing to sue for infringement of the '747 patent, and remand for further proceedings consistent with this opinion.

## COSTS

No costs.

## VACATED AND REMANDED